IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CANDIS BROWN, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | 5:05-CV-475 (DF) |
| | : | |
| SHERIFF THOMAS SMITH, | : | |
| individually, as Sheriff of | : | |
| Washington County, Georgia, | : | |
| | : | |
| Defendant. | : | |

# O R D E R

## I.    INTRODUCTION

On December 29, 2005, Candis Brown, Arnitrius Hurst, Mary Shannon Page, Monica Cannon, Terry Anderson, Laura Grable, and Theresa Evans ("Plaintiffs"), all former inmates of the Washington County Jail ("Jail") in Washington County, Georgia, instituted the present action against Thomas Smith ("Defendant"), Sheriff of Washington County, Georgia, in his individual capacity.  Plaintiffs charge Defendant with violations of the Eighth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, and enforced through 42 U.S.C.A. § 1983 (West 2005).

1

On February 27, 2006, Defendant moved to dismiss Plaintiffs' action, claiming, among other things, that he is entitled to qualified immunity from this suit. (Def.'s Mot. Dismiss, doc. 3.) Defendant further maintains that, even if this Court does not grant him qualified immunity, the action should still be dismissed because Plaintiffs have not stated a claim for relief under § 1983. *See* Fed. R. Civ. P. 12(b)(6) (West 2005). After carefully reviewing the pleadings, the Court concludes that dismissal is not appropriate because Defendant is not entitled to qualified immunity at this stage of the proceedings, and Plaintiffs have adequately pleaded their claims.

## II.    STANDARD OF REVIEW

A court should grant a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ***Conley v. Gibson***, 355 U.S. 41, 45-46 (1957). When considering a Rule 12(b)(6) motion, the court's function is not to assess the veracity or weight of the evidence that might be offered in support of the complaint; instead, the court must merely determine whether the complaint is legally sufficient. *See **Sherman ex rel. Sherman v. Helms***, 80 F. Supp. 2d 1365, 1368 (M.D. Ga. 2000). The court also must accept all material facts alleged in the complaint as true, and it must construe all

reasonable inferences in the light most favorable to the plaintiff.  *See Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999) (per curiam).  If the facts alleged in the complaint would allow the plaintiff to recover under any possible theory, the motion must be denied, regardless of whether the facts would allow recovery under the particular theory pleaded by the plaintiff.  *See Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992).

While the foregoing principles generally guide a court's 12(b)(6) analysis, a plaintiff bringing a § 1983 individual-capacity claim against a government official[1] is subject to a heightened pleading requirement.  *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).  This heightened standard requires the plaintiff to "allege with some specificity the facts which make out [his] claim."  *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998).  This means that "[m]ore than mere conclusory notice pleading is required," and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1987).

---

[1] The heightened pleading standard applies only to suits brought against government officials who are entitled to raise qualified immunity as a defense.  This standard does not apply to individuals or entities, such as municipalities, private organizations, and their respective employees, who cannot raise qualified immunity as a defense.  *See Swann*, 388 F.3d at 837.

## III.   PLAINTIFFS' FACTUAL ALLEGATIONS AND LEGAL CLAIMS

### A. Factual Allegations

Plaintiffs allege they were sexually assaulted by jailers Freddie Morris or Jake Norris[2] (or by both men) during their incarceration.  (Pls.' Compl., doc. 1, at ¶¶ 36-52.)

Plaintiffs further claim that Defendant, as Sheriff of Washington County, is responsible for the administration and supervision of the Jail, its employees, and the inmates.  (Compl. ¶ 11.)  According to Plaintiffs, Defendant violated "their rights guaranteed by the Eighth and Fourteenth Amendments" by failing to protect them from the sexual assaults committed by Morris and Norris.  (Compl. 1.)

Plaintiffs advance numerous arguments to support their contention that Defendant is directly responsible for the sexual assaults that occurred at the Jail. First, Plaintiffs allege that, prior to the assaults, Defendant "was advised of reports that jailers employed by him in the Washington County Jail were engaged in sexually inappropriate relations with inmates," in violation of O.C.G.A. § 16-6-5.1 (Lexis 2005).  (Compl. ¶¶ 18-19.)  Despite receiving these reports, Defendant

---

[2] At the time of the alleged sexual assaults, Norris "held the rank of Lieutenant and supervised other jailers employed by Defendant Smith, including Freddie Morris." (Compl. ¶ 17.)  Plaintiffs have instituted a separate action against Defendants Norris and Morris in their individual capacities. *See* case number 5:05-cv-283 (DF).

purportedly "made no investigation of these reports . . . did not advise any other law enforcement agency of these reports in order for that law enforcement agency to conduct an appropriate investigation, and he took no disciplinary action against the jailers alleged to have been involved in sexual contact with inmates of the [Jail]." (Compl. ¶ 20.)  Plaintiffs further allege that Defendant failed to respond to the reports of sexual misconduct despite being aware of "the high possibility that jailers would engage in sexual contact with inmates."  (Compl. ¶ 31.)  Plaintiffs also aver that Defendant failed to "implement an effective policy whereby inmates of the Washington County jail could file grievances relating to the conduct of the jailers. . . ."  (Compl. ¶ 34.)  Ultimately, Plaintiffs contend that these reports made Defendant "aware of the need for training and supervision of jailers in order to prevent sexual contact between jailers and inmates," but Defendant did not implement training or supervisory measures to address his employees' misconduct. (Compl. ¶ 32.)  According to Plaintiffs, "[t]he inevitable result of Defendant Smith's failure to provide the necessary training and/or supervision was a continuation of sexual misconduct by Defendant Smith's jailer [sic]."  (Compl. ¶ 33.)

**B. Legal Claims**

Plaintiffs allege that the sexual assaults committed by Morris and Norris violated their Eighth Amendment right to be free from cruel and unusual punishment. (Compl. ¶¶ 53, 60, 67, 74, 81, 88, 95.) Plaintiffs also allege that Morris and Norris violated their substantive due process rights guaranteed by the Fourteenth Amendment.[3]   (Compl. ¶¶ 54, 61, 68, 75, 82, 89, 96.)

Plaintiffs further allege that Defendant is liable for the sexual assaults committed by Morris and Norris because there is a causal connection between the assaults and Defendant's custom, policy and practice of ignoring reports of sexually inappropriate behavior between his jailers and the inmates, and his failure to properly train and supervise his subordinates. (Compl. ¶¶ 56-57, 63-64, 70-71, 77-78, 84-85, 91-92, 98-99.)  Plaintiffs believe Defendant's failure to adequately respond to the numerous reports of sexual misconduct amounted to deliberate indifference to the rights of the inmates to be free from sexual assaults by jail employees. (Compl.

---

[3] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishments Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  It is unclear at this point whether Plaintiffs were pretrial detainees or convicted prisoners at the time the assaults occurred.  Ultimately, the distinction makes little difference because "decisional law involving prison inmates applies equally to cases involving pretrial detainees." *Id.*  In the interests of clarity and efficiency, the Court will address Plaintiffs' allegations in the light of Eighth Amendment decisional law.

¶¶ 55, 62, 69, 76, 83, 90, 97.)

Plaintiffs seek compensatory damages for the physical, mental, and emotional pain and suffering and personal humiliation suffered as a result of the constitutional deprivations alleged in their complaint. Plaintiffs also seek nominal and punitive damages for Defendant's reckless disregard of their federally protected rights. (Compl. 25-26.)

## IV.    LEGAL DISCUSSION

Defendant asserts that dismissal is warranted for three reasons: (1) Plaintiff's complaint fails to state a § 1983 claim; (2) Defendant is entitled to qualified immunity; and (3) the complaint fails to allege a sufficient proximate causal connection between any injury and Defendant's conduct. (Def.'s Mot. Dismiss, doc. 3, at 1-18.) Defendant also asserts, "out of an abundance of caution," that official immunity bars any state-law claims against Defendant. (Def.'s Mot. 16-17.) In the alternative, Defendant argues that, even if the Court does not dismiss the entire action, the Court should dismiss Plaintiffs' punitive damages claim. (Def.'s Mot. 17-18.)

**A. Section 1983, Qualified Immunity, and Failure to State a Claim**

"To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must show that the defendant, under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States." *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). "Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* "An underlying constitutional right must exist before a § 1983 action will lie." *Id.*

Although § 1983 grants individuals a private right of action against state actors, state actors acting within the scope of their official duties nonetheless may be entitled to qualified immunity from such actions.[4] Qualified immunity shields a government official performing discretionary functions from liability for civil damages unless the performance of such functions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (citations and quotations omitted).

---

[4] "While the defense of qualified immunity is typically addressed at the summary-judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Before a defendant is eligible for the protection of qualified immunity, he must prove that he was performing a discretionary function "when the allegedly wrongful act occurred." *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). If the defendant satisfies this threshold requirement, the burden shifts to the plaintiff to demonstrate "that the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)).

Once a defendant satisfies his initial burden, courts employ a two-step analysis to determine whether the defendant is entitled to qualified immunity. The first inquiry is whether the defendant violated a constitutional right. If a constitutional violation is found, the court will then determine whether the constitutional right was clearly established at the time of the violation. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "If no constitutional right could have been violated," the defendant is entitled to qualified immunity, and "there is no need to proceed to the second step." *Danielle v. Adriazola*, 284 F. Supp. 2d 1372-73 (S.D. Fla. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).

When a defendant asserts qualified immunity in a 12(b)(6) motion to dismiss, the court's determinations of whether the plaintiff has stated a claim and whether

the defendant violated a constitutional right merge.   *Danielle*, 284 F. Supp. 2d. at 1372-73 (citing *GJR Inv.*, 132 F.3d at 1366).   If the court determines that no constitutional right was violated, then the plaintiff has not stated a claim for relief, and the defendant's motion to dismiss should be granted.   However, if the court "finds that a constitutional right was violated based on 'a favorable view of the parties submissions,' then the court must determine whether that right was clearly established in light of the specific context of the case." *Id.* (quoting *Saucier*, 533 U.S. at 202).

### 1. Discretionary Function

A defendant's actions are deemed to be within the scope of his or her discretionary authority if "objective circumstances . . . compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich*, 841 F.2d at 1564 (quotation omitted).

Because the administration of the Jail is one of Defendant's primary responsibilities as sheriff, there can be little doubt that Defendant was acting within his job responsibilities when the wrongful conduct giving rise to Plaintiffs' claims arose.  *See* O.C.G.A. § 42-4-1 (sheriffs "are jailers of the counties and have the authority to appoint other jailers"); 42-4-4 (outlining sheriff's duties) (Lexis 2005);

*see* **Kendrick v. Adamson**, 180 S.E. 647, 648 (Ga. Ct. App. 1935) ("A sheriff owes to a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him. . . ."). Thus, Defendant is entitled to assert qualified immunity. To overcome Defendant's assertion of qualified immunity, Plaintiffs must show that Defendant's conduct violated their clearly established constitutional rights.

### 2. Constitutional Violations

### (a) Did Morris's and Norris's sexual assaults violate the Eighth Amendment?

At this point, the Court must examine the complaint to determine if its allegations, assuming they are true, plead a cognizable violation of the Constitution. **Saucier**, 533 U.S. at 201.

Plaintiffs contend that the underlying sexual assaults committed by Morris and Norris violated their Eighth Amendment right to be free from sexual assault. (Compl. ¶¶ 53, 60, 67, 74, 81, 88, 95.)

"[S]evere or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." **Boxer X v. Harris**, 437 F.3d 1107, 1111 (11th Cir.

11

2006).  "'[S]exual abuse of a prisoner by a corrections officer has no legitimate penalogical purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'"  ***Id.*** (quoting ***Boddie v. Schnieder***, 105 F.3d 857, 861 (2d Cir. 1997)) (citation and quotation omitted).  The determination of whether a prison official's sexual abuse of a prisoner constitutes an Eighth Amendment violation requires a two-part inquiry.  The first inquiry is the objective component, "which requires that the injury be 'objectively, sufficiently serious.'" ***Id.*** (quoting ***Boddie***, 105 F.3d at 861).  "[A]n injury can be objectively, sufficiently serious only if there is more than *de minimis* injury."  ***Id.*** The second inquiry is the subjective component, "which requires the prison official [to] have a sufficiently culpable state of mind." ***Id.*** (quotations omitted).

There can be no doubt that sexual abuse of an inmate by a prison official can be objectively serious enough to constitute an Eighth Amendment violation.  Here, the seriousness of the sexual abuse alleged ranges from Morris's repeated touching of Plaintiff Brown's private parts, to Morris and Norris forcing Plaintiffs Grable, Evans, Hurst, Page, and Cannon to engage in sexual intercourse with them, to Norris forcing Plaintiffs Evans and Anderson into a closet and directing male inmates to engage in sexual intercourse with them.  (Compl. ¶¶ 43, 46, 47, 49, 51.)

These allegations, if proved, are objectively, sufficiently serious, and establish that Morris and Norris each acted with a sufficiently culpable state of mind. Accordingly, the Court finds that Plaintiffs have sufficiently pleaded that the sexual assaults committed by Morris and Norris deprived them of their Eighth Amendment right to be free from sexual assault.

**(b) Can Defendant be held liable for his employees' constitutional violations?**

The central question remaining is whether Defendant, as supervisor of the Jail, can be held liable as a matter of law for the constitutional deprivations allegedly committed by his subordinates.

Plaintiffs argue that Defendant, too, violated their Eighth Amendment right to be free from sexual assault because his custom or policy of ignoring reports of sexual misconduct between his employees and the inmates created a permissive environment wherein Plaintiffs were repeatedly subject to sexual advances and assaults by Jail employees. Specifically, Plaintiffs allege that Defendant, despite receiving reports of widespread instances of his employees' sexual misconduct, conducted no investigation, alerted no other law enforcement officials so that they could conduct an investigation, and took no disciplinary action against jailers who

allegedly had engaged in sexually inappropriate behavior with inmates. Defendant asserts that Plaintiffs' allegations, if proved, do not state a claim for relief under the Eighth Amendment because Plaintiffs cannot hold him liable for his subordinates' unconstitutional conduct based on respondeat superior or vicarious liability. (Def.'s Mot. 6-14.)

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 1983 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). In fact, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't Labor & Employment Security*, 133 F.3d 797, 802 (11th Cir. 1998). As such, a supervisor will only be held liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Id.* "A causal connection can be established 'when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Gonzales v. Reno*, 325 F.3d

1228, 1234 (11th Cir. 2003) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).  A causal connection may also be established if the supervisor's improper custom or policy "result[s] in deliberate indifference to constitutional rights." *Rivas*, 940 F.2d at 1495.

Plaintiffs do not allege that Defendant was personally involved in the sexual assaults committed by Norris and Morris.  The only issue remaining, then, is whether Plaintiffs have sufficiently pleaded the requisite causal connection between Defendant's supervisory actions or omissions and the alleged constitutional deprivations. When addressing this question, the Court will rely on the facts as alleged in the complaint, while keeping in mind the heightened pleading requirement applicable to this case.

As the Court has already noted, Plaintiffs allege that, while Norris and Morris were employed as jailers, Defendant Smith received numerous reports of sexual misconduct, but did not conduct an investigation, did not forward the reports to another law enforcement agency, and did not take any disciplinary action against the jailers suspected of sexually inappropriate behavior.  (Compl. ¶¶ 18, 20.) Plaintiffs further allege that Defendant's notice of his employees' sexual misconduct created a duty to train and supervise his jailers to prevent further sexual contact

between them and the inmates.  (Compl. ¶ 32.)  Finally, Plaintiffs allege that the "inevitable result of Defendant Smith's failure to investigate the allegations of jailer misconduct and his failure to provide the necessary training and supervision of his employees was a continuation of sexual misconduct by Defendant Smith's jailer [sic]."  (Compl. ¶ 33.)

Based on the allegations in the complaint, the Court finds that Plaintiffs pleaded, in sufficient detail, the facts supporting their supervisory claims against Defendant and the causal connection between Defendant's wrongful conduct and the constitutional violations alleged.  These facts, if proved, could establish that Defendant had notice of the history of widespread inmate abuse at the Jail, but failed to prevent or correct further sexual abuse of the inmates by his employees.  These facts may also establish that Defendant, through his alleged custom or policy of ignoring reports of sexual misconduct and his failure to take remedial measures to correct the misconduct, was deliberately indifferent to Plaintiffs' Eighth Amendment right to be free from sexual assault.  *See LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993);  *Braddy*, 133 F.3d at 802.  Accordingly, having found that Plaintiffs' allegations establish a constitutional violation, Defendant's motion to dismiss for failure to state a claim is hereby **DENIED**.

**(b) Clearly Established**

Defendant urges the Court to find that, even if the allegations pleaded in the Complaint establish a constitutional violation, he is still entitled to qualified immunity because a jail supervisor's duty to safeguard an inmate's constitutional right to be free from sexual assault was not clearly established at the time of the alleged assaults.  According to Defendant, no "Supreme Court or Eleventh Circuit case [ ] told Sheriff Smith that he could be liable under the Eighth or Fourteenth Amendments for the alleged sexual assaults by subordinate jailers." (Def.'s Mot. 14.) Moreover, Defendant believes he "had no clearly established constitutional duty to tell or train jail officers not to sexually assault inmates" because "sexual misconduct by law enforcement officers against detainees is so far out of bounds that alleged failure to train or supervise cannot be a basis for liability."  (Def.'s Mot. 12-13.) Nonetheless, Plaintiffs maintain that Defendant had adequate warning that he could be held liable for his failure to properly train and supervise his jailers regarding such conduct because  a "history of inappropriate sexual contact between jailers and inmates exist[ed] at the jail."  (Pls.' Resp. Def.'s Mot. Dismiss, doc. 9, at 8.)

A constitutional right is clearly established if "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing

violates that right." ***United States v. Lanier***, 520 U.S. 259, 270 (1997).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent."  ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987) (citation omitted).

In ***LaMarca v. Turner***, 995 F.2d 1526 (11th Cir. 1993), the Eleventh Circuit addressed a prison superintendent's Eighth Amendment liability for the "excessively permissive atmosphere" within the prison which allegedly subjected the plaintiffs to, among other things, repeated sexual assaults by their fellow inmates.  According to the plaintiffs, the following prison conditions supported a finding that the superintendent failed to take reasonable measures to protect the inmates from the threat of violence: "(1) improper and inadequate staff training . . . (2) a staff out of control who did not report rapes, assaults, and illegal activities up through the chain of command, (3) [the superintendent's] failure to supervise staff and administer measures which would minimize the chance of error and maximize the full satisfaction of constitutional protection . . . (4) [the superintendent's] shocking failure to employ any standard procedure to investigate incidents of alleged rapes, and (5) [the superintendent's] failure to provide inmate movement

controls thus reducing the casual egress and ingress of aggressive wolves within the open dormitories. . . ." *Id.* at 1538 (quotations omitted).  The Eleventh Circuit agreed with the plaintiffs, finding that the inmates' "unjustified constant and unreasonable exposure to violence" constituted a condition of confinement that inflicted unnecessary pain or suffering in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.[5]  *Id.* at 1535.

Here, as in *LaMarca*, Plaintiffs allege that Defendant improperly and inadequately trained and supervised his staff, failed to investigate incidents of alleged sexual assaults, and granted staff virtually unrestricted access to inmates, thereby creating a permissive environment which allowed ill-intentioned staff members to prey on female inmates.  While the two cases are not factually indistinguishable, the facts of *LaMarca* and the facts in the instant case are sufficiently similar to have made Defendant aware of the minimum constitutional standards for jail administration before his alleged constitutional violations.  Although the sexual assaults at issue in *LaMarca* were committed by inmates

---

[5] Ultimately, although the Eleventh Circuit found that the record contained "sufficient evidence upon which the district court could find" the prison superintendent liable under the Eighth Amendment, the court found that the district court "failed to make certain essential findings of fact and erred in its legal analysis" with respect to the deliberate indifference and causation elements of the plaintiffs' Eighth Amendment claims; thus, the Eleventh Circuit remanded the case to the district court for reconsideration of those issues. *LaMarca*, 995 F.2d at 1534.

against fellow inmates, and the sexual assaults here were allegedly committed by jailers against inmates, this distinction only strengthens the Court's opinion that Defendant had adequate notice that his failure to address reports of sexual misconduct by his employees could subject him to individual liability under § 1983. After the Eleventh Circuit recognized in *LaMarca* that a prison supervisor can be held liable for his failure to train and supervise his employees to prevent inmate violence, any reasonable prison or jail supervisor would conclude that his failure to implement training and supervisory measures to prevent sexual assaults by his own employees could also subject him to supervisory liability under § 1983.

In sum, the Court finds that *LaMarca* made it apparent that a prison supervisor's failure to respond to numerous reports signaling an atmosphere within the prison that subjected inmates to the continuous threat of violence, including sexual assault, was unlawful, and could subject him to supervisory liability under § 1983.  Accordingly, the Court concludes that the Plaintiffs' allegations against Defendant, if proven, will establish a violation of clearly established law.

Having found that Defendant's conduct was within the scope of his discretionary authority as sheriff, and having further found that Plaintiffs sufficiently pleaded facts that would establish Defendant's violation of clearly

established law, the Court hereby rejects Defendant's assertion of qualified immunity.

**B. Proximate Causation**

Defendant also argues that, even if the Court denies him qualified immunity, the Court should still dismiss the action because "[Defendant's] conduct could not have *proximately caused* the alleged harm in this case, as a matter of law."  Defendant maintains that he cannot be held liable because "Plaintiffs' alleged injuries are the result of alleged criminal acts by autonomous third parties . . . without reference to any supposed acts or omissions by [Defendant]."  (Def.'s Mot. 14-16.)  The Court disagrees.

It is well established that a supervisory official "need not have had personal participation or involvement in the acts of the employees to be held liable" under § 1983.  *Goodson*, 763 F.2d at 1389 (supervisor can be held liable under § 1983 for failure to: "(a) train subordinates and to establish procedures for protection of constitutional rights and (b) to take action against violations of which he had notice. . . .") (citing, inter alia, *McCann v. Coughlin*, 698 F.2d 112 (2d Cir. 1983); *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1980); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979); *Beverly v. Morris*, 470 F.2d 1356 (5th Cir. 1972); *Roberts v.*

*Williams*, 456 F.2d 819 (5th Cir. 1971); *Wright v. McMann*, 387 F.2d 519 (2d Cir. 1967)).  In this case, the Court has already found that Plaintiffs have sufficiently pleaded a causal relationship between the jailers' alleged assaults and Defendant's improper conduct.  A separate showing of proximate cause, then, is not required at this time.  *See LaMarca*, 995 F.2d at 1538.

## C. State Law Tort Claims

The Court will not address Defendant's arguments for the dismissal of state-law claims which Plaintiffs did not assert in their complaint.

## D. Punitive Damages

Finally, Defendant contends that, even if the Court does not accept his foregoing arguments, the Court should dismiss Plaintiffs' claims for punitive damages because Plaintiffs did not allege any facts that would support a finding that he "had any intent to direct misconduct against any Plaintiff."  (Def.'s Mot. 18.)

A jury may award punitive damages in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983) (emphasis added); *see also H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986).

Here, Plaintiffs allege that Defendant received reports of sexual assaults and other forms of sexual misconduct during his tenure as sheriff, and yet he did nothing: he did not investigate these reports, he did not relay these reports to other law enforcement agencies, and he did not properly train or supervise his subordinates.  These allegations, if proved, could demonstrate that Defendant's failure to address his employees' illegal behavior exhibited recklessness or callous indifference to Plaintiffs' Eighth Amendment right to be free from sexual assault.

Accordingly, the Court will not dismiss Plaintiffs' claim for punitive damages at this juncture.

## V.      CONCLUSION

For the foregoing reasons, Defendant is not entitled to qualified immunity, and dismissal is not appropriate.  Defendant's Motion to Dismiss (doc. 3) is hereby **DENIED**.

SO ORDERED, this 10th day of July, 2006.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab

23